Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 251 | DATE | 2/28/2003 |
| CASE TITLE | | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Defendant's Rule 12(b)(1) motion to dismiss Count I based on abstention doctrines [8-1]; and grants the Rule 12(b)(6) motion as to Count I [8-2]. The Court declines to exercise supplemental jurisdiction as to Count II pursuant to 28 U.S.C. Section 1367(c)(3). This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH YASAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| THE RETIREMENT BOARD OF THE ) | 02 C 251 |
| POLICEMEN'S ANNUITY AND ) | |
| BENEFIT FUND OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
MAR 0 4 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Yasak, a former Chicago police officer, has sued the Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago ("Board") for violation of his due process rights pursuant to 42 U.S.C. § 1983 (Count I) and also seeks administrative review of the Board's denial of benefits pursuant to 735 ILL. COMP. STAT. 5/3-101 *et seq.* (Count II). Before the Court is defendant's Fed. R. Civ. P. ("Rule") 12(b)(1) and 12(b)(6) motions to dismiss. For the following reasons, the Court denies the Rule 12(b)(1) motion and grants the Rule 12(b)(6) motion as to Count I. The Court declines to exercise supplemental jurisdiction as to Count II pursuant to 28 U.S.C. § 1367(c)(3).

## FACTS

The following facts are those alleged in the plaintiff's amended complaint, and for the purpose of the current motions, they are accepted as true. Plaintiff was appointed as a Chicago police officer in October 1960 and resigned on or about September 26,

1988. (Am. Compl. ¶ 6.) Upon his resignation, plaintiff applied to the defendant Board to receive his annuity benefits. (*Id.* ¶ 7.) On or about December 8, 1988, plaintiff was convicted in the United States Court for the Northern District of Illinois of violating 18 U.S.C. § 1623, which punishes false declarations before a Grand Jury. (*Id.* ¶ 6.) He was sentenced to 3 years of probation, 90 days of imprisonment, and 300 hours of community service. (*Id.*)

As a result of plaintiff's felony conviction, the Board determined in April 1991 that his annuity benefits were forfeited pursuant to 40 ILL. COMP. STAT. 5/5-227 (West 2001) of the Illinois Code. (*Id.* ¶ 7.) Then plaintiff applied for a refund of his contributions and the Board issued a refund to him in late April 1991. (*Id.* ¶ 8.) On January 20, 2001, the President of the United States, William Jefferson Clinton, issued to plaintiff a Full and Unconditional Pardon as to the aforementioned conviction. (*Id.* ¶ 9.)

Thereafter, on May 23, 2001, plaintiff contacted the Executive Director of the Defendant Board and advised him that he was making a claim for the retroactive and prospective restoration of his annuity benefits. (*Id.* ¶ 10.) Plaintiff also requested a hearing to present his claim and asked the Board to calculate the amount of benefits to which he purportedly was entitled. (*Id.*) After the defendant requested and the plaintiff provided a copy of his Presidential Pardon in early June of 2001, the plaintiff made several additional, unsuccessful attempts to contact the defendant in the remaining months of 2001. (*Id.* ¶¶ 11-14.) On December 21, 2001 the plaintiff received a letter from the Board that stated that the Board had no statutory authority or jurisdiction to rehear or reconsider its previous decision denying benefits. (*Id.* ¶ 15.) The Board also notified plaintiff in the same letter that under the Illinois Administrative Review Act, 735

ILL. COMP. STAT. 5/3-101 (West 2001), he had 35 days in which to challenge the decision of the Board in the Circuit Court of Cook County. (*Id.* ¶¶ 30-32.)

The plaintiff filed the instant action on January 10, 2002 alleging a section 1983 claim (Count I). Plaintiff also filed a Petition for Administrative Review on January 17, 2002 in the Circuit Court of Cook County. On March 26, 2002, plaintiff filed an amended complaint and added the claim seeking administrative review of the Board's decision (Count II).

## DISCUSSION

### A. Motion for Abstention

The Board first asks that Count I be dismissed pursuant to a Rule 12(b)(1). Plaintiff, of course, disagrees and argues that abstention is inapplicable. The Court agrees with plaintiff.

The Seventh Circuit has noted "that the Supreme Court has recently stressed that the federal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress." *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356, 359 (7th Cir. 1998) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). Only in certain very limited circumstances may a federal district court decline jurisdiction over a case or controversy before it. *Younger v. Harris*, 401 U.S. 37, 53 (1971) (holding that federal courts should abstain from interfering with pending state criminal proceedings, except where there is bad faith or harassment); *see Trust & Investment Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994) (stating *Younger* abstention doctrine has been held to apply if (1) the judicial or judicial in nature state proceedings is on-going; (2) the

3

proceedings implicate important state interests; and (3) there is an adequate opportunity in the state court proceeding to raise constitutional challenges); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976) (abstaining to avoid duplicative litigation); *Burford v. Sun Oil Co.*, 319 U.S. 315, 333 (1943) (calling for abstention when court is faced with unsettled questions of state law where there exists a complex state administrative scheme and the need for centralized decisionmaking); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499-501 (1941) (stating abstention appropriate where federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law). Abstention doctrines are rooted in concerns for federalism and comity, *i.e.*, "sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44.

In this case, the Court's approach avoids the potential for interference with state court proceedings and the concerns raised by *Younger, Pullman, Burford,* and *Colorado River* and upholds the notions of federalism and comity. The Court exercises its discretion pursuant to 28 U.S.C. § 1367(c)(3) to decline jurisdiction over the state law claim (Count II). Further, the question that Count I presents, *i.e.*, the scope of a presidential pardon, is particularly and uniquely a federal issue and one that the Court will presently decide.

## B. Motion to Dismiss Plaintiff's Section 1983 Claim for Failure to State a Claim

"[O]n a Rule 12(b)(6) motion the plaintiff must be allowed to go forward with the case if relief could be granted under any set of facts that the plaintiff could prove consistent with the allegations in the complaint." *Sledd v. Lindsay*, 102 F.3d 282, 289 (7th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). That the claim here is a section 1983 claim does not change this standard. *Sledd*, 102 F.3d at 288. "[A] pleading must only contain enough to 'allow the court and the defendant[s] to understand the gravamen of the plaintiff's complaint.'" *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996)).

A plaintiff who presents a claim seeking relief under section 1983 must establish that (1) the alleged conduct was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights (life, liberty, or property), privileges, or immunities secured by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1.

Here, plaintiff brings a substantive due process claim in which he alleges that the Board improperly deprived him of his property when it refused to reinstate his retirement benefits as well as a procedural due process claim in

5

which he alleges that the Board failed to conduct a hearing prior to denying his benefits. The Court addresses each in turn.

"One prerequisite for a substantive due process claim to be cognizable is an underlying constitutionally protected property interest." *Swartz v. Scruton*, 964 F.2d 607, 609 (7th Cir. 1992). Likewise, a threshold requirement for a procedural due process claim is a protected property interest. *Ledford v. Sullivan*, 105 F.3d 354, 357 n.3 (7th Cir. 1997).

At this early stage, the Court must determine whether the plaintiff can first plead a set of facts legally sufficient to demonstrate a property interest secured under Illinois state law so that one or both of his due process claims may proceed. The answer to this question is dependent, however, on the existence of a cognizable property interest. Whether someone who has been pardoned has a protected property interest in his pension, which was forfeited due to his application for a refund after his conviction, is a novel issue.

Generally speaking, property interests must emanate from state law. As the Supreme Court noted in *Roth v. Board of Regents*, 408 U.S. 564, 577 (1972):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

However it is created, a property interest is not constitutionally cognizable unless the individual has a "legitimate claim of entitlement" to the benefit. *Id.* As the *Roth* Court stated: "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a

6

unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Here, plaintiff argues that he has a demonstrated property interest in the annuity that he was formerly entitled to receive upon his retirement from the Police Board. Defendant, however, disputes that plaintiff has a protected property interest in the annuity. Specifically, defendant argues that because plaintiff alleges he elected to receive his previous contributions to his annuity, he does not have a protected property interest in his retirement benefits. Defendant claims that Illinois law explicitly denies plaintiff a property right once convicted. Specifically, section 5-227 of the Illinois Pension Code provides that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman . . . ." 40 ILL. COMP. STAT. 5/5-227. The plaintiff alleges that he did apply for and receive a full refund of his pension contributions, and the legal effect of his conduct is explained by section 5-163(c) of the Code, which states: "A policeman who withdraws the amount credited to him surrenders and forfeits all rights to any annuity or other benefit from the fund, for himself and for any other person or persons who might otherwise have benefited through him." 40 ILL. COMP. STAT. 5/5 -163(c).

In response, the plaintiff contends that but for the conviction, he would not have elected to receive some compensation under the statute, and consequently, he is entitled to a reinstatement into the fund. Even if the Court were to agree with defendant's characterization of the statutory provisions, the Court would not

7

be able to dismiss plaintiff's claim solely on that basis without considering the legal effect, if any, of the presidential pardon. In other words, the Court must examine the full extent of the effect of the Pardon to determine whether the plaintiff has a cognizable property interest in the first place.

Article II, Section 2 of the United States Constitution provides that the President "shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. CONST. art. II, § 2, cl. 1. Moreover, Article VI provides that a Presidential Pardon is the supreme law of the land that is binding on federal and state courts. U.S. CONST. art. VI, § 1, cl. 2. "A presidential pardon restores state as well as federal civil rights." *Bjerkan v. United States*, 529 F.2d 125, 129 (7th Cir. 1975). However, a "pardon does not 'blot out guilt' nor does it restore the offender to a state of innocence in the eye of the law." *Id.* at 128 n.2. Put simply, "the pardon removes all legal punishment for the offense." *Id.* The practical effect of the pardon on the individual's daily life is restorative in nature, because it returns to the individual the state and federal rights that the conviction once removed. *Carlesi v. New York*, 233 U.S. 51, 57 (1914); *Bjerkan*, 529 F.2d at 126.

Only once has the Supreme Court addressed the relationship between a Presidential Pardon and state law. In *Carlesi v. New York*, 233 U.S. at 57, the petitioner's federal conviction, which was subsequently pardoned, was taken into account in state sentencing proceeding toughening the sentence for "habitual" criminals. The precise issue before the Court was "how far a pardon granted as to an offense committed against the United States operates, so to speak,

8

extraterritorially as a limitation upon the states, excluding them from considering the conviction of the prior and pardoned offense against the United States in a prosecution for a subsequent state offense." *Id.* The Court held, rather narrowly, that a state could take a previous conviction into account when sentencing because the sentence did not impose an additional punishment for the pardoned offense but rather imposed punishment for the new crime only. *Id.* at 58.

Additionally, in *Bjerkan v. United States*, 529 F.2d 125 (7th Cir. 1975), the court addressed the relationship between a Presidential Pardon and state law. The issue before the *Bjerkan* court was "whether a full pardon eliminates all 'collateral consequences' of the petitioner's conviction." *Id.* at 126. The Court concluded: "any deprivation of a person's basic civil rights, including the right to vote, the right to serve on juries and the right to work in certain professions, by a state on account of a federal conviction would constitute a punishment. Consequently, the pardon restored the basic set of state rights as well." *Id.* at 127-28.

Plaintiff asserts that he was forced under state law to forfeit his property interest in his annuity to the state because of his conviction. Therefore, plaintiff's argument goes, a restoration of his basic rights necessarily must include the forfeited property. Plaintiff relies on *Knote* to support his claim. In *Knote*, the Court considered the case of a West Virginia landowner who had been convicted of treason. 95 U.S. at 149. As a result of the conviction, the federal government seized the landowner's property pursuant to the Confiscation Act of 1862. The Court considered the history of the pardon and ruled that it had the legal effect of restoring the landowner's civil and political rights, specifically, his

9

forfeited land. *Id.* The Court held that the forfeited property fell into the category of disabilities that were restored upon receipt of the pardon, and consequently, the Court ordered the federal government to return the forfeited property. *Id.*

The Court finds *Knote* distinguishable from the instant case and concludes that the plaintiff's complaint does not allege a set of facts that may entitle him to relief. The plaintiff surrendered any property interest he had in his annuity by voluntarily electing to receive reimbursement in the amount he previously contributed to the pension fund. While it is true that Illinois law provides that a convicted individual automatically forfeits his retirement benefits, and the *Knote* Court ordered the restoration of property forfeited pursuant to a conviction, in the instant case, plaintiff's election and acceptance of a refund in that forfeited interest had the practical effect of negating the forfeiture. The plaintiff in *Knote* did not elect to forfeit all of his property by receiving some of his property back. Had plaintiff in the instant case not elected to forfeit his complete interest by receiving a partial interest, his situation would be more closely analogous to the situation in *Knote*.

Such an interpretation is consistent with the spirit and reasoning of *Bjerkan*. The Court finds that the holding of *Bjerkan* was limited to an attempt by the state to punish on the basis of a conviction in a post-pardon world. As the Court stated:

> If the conviction were pardoned, as it was here, such *attempted punishment* would constitute a restriction on the legitimate, constitutional power of the President to pardon an offense against the United States and would be void as circumscribing and nullifying that power.

529 F.2d at 128 (emphasis added). Here, there is no additional *act* of punishment by the state. At the very least, the plaintiff's election can be seen as a self-imposed punishment

10

in that it extinguished his previously held property interest in his pension.

The Court also concludes that the scope of the Presidential Pardon does not legally extend retroactively to decisions that the plaintiff made after his conviction, such as the election of pension contributions, so as to reverse their practical legal effect. The Court will not broaden the Seventh Circuit's interpretation of the basic set of "restored" rights articulated in *Bjerkan* to include the applied for and received "reimbursement" retirement benefits. Interpreting the set of restored "rights" to include voluntary decisions made after a conviction that had the legal effect of forfeiting a property interest too broadly interprets the intended scope of the Pardon, and presents the Court with the daunting task of discerning whether decisions made after a conviction were or were not because of the conviction. The Supreme Court's interpretation that "an offender is released from the consequences of his offence, so far as such release is practicable," *Knote*, 95 U.S. at 153, is particularly applicable to this situation. Even if the pardon eliminated plaintiff's felony conviction, it did not eliminate plaintiff's voluntary decision to apply for and accept a refund. Accordingly, plaintiff's complaint fails to allege a set of facts that may legally entitle him to relief on either his substantive due process or his procedural due process claim, and the defendant's motion to dismiss as to Count I is granted.

### C. Motion to Dismiss Plaintiff's Administrative Review Claim (Count II)

Under 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original

jurisdiction." As discussed above, the Court has granted defendant's motion to dismiss plaintiff's federal claims. Accordingly, this Court in its discretion declines to exercise supplemental jurisdiction over Count II, which seeks administrative review of the Board's denial of benefits pursuant to 735 ILL. COMP. STAT. 5/3-101 *et seq.*

## CONCLUSION

For the foregoing reasons, the Court: (1) denies defendant's Rule 12(b)(1) motion to dismiss Count I based on abstention doctrines [doc. no. 8-1]; (2) grants defendant's Rule 12(b)(6) motion to dismiss Count I [doc. no. 8-1]; and (3) declines to exercise supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(c). This case is hereby terminated.

**SO ORDERED**    **ENTERED:** 2/28/03

**HON. RONALD A. GUZMAN**
**United States Judge**